IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE INVISION TECHNOLOGIES, INC.
SECURITIES LITIGATION

_____/

No. C04-03181 MJJ

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT**

## INTRODUCTION

Before the Court is Defendants' Motion to Dismiss the Amended Consolidated Complaint. Defendants InVision Technologies, Inc. ("InVision"), Sergio Magistri ("Magistri"), and Ross Mulholland's ("Mulholland") (collectively "Defendants") move to dismiss this private securities fraud action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Lead Plaintiffs Glazer Capital Management, LP and Glazer Offshore Fund, Ltd. ("Plaintiffs"), oppose the motion. After careful consideration of the arguments of counsel and the papers submitted, the Court **GRANTS** Defendants' Motion to Dismiss with leave to amend the Complaint.

## FACTUAL BACKGROUND

**A.   Background**

InVision manufactures and supplies computer tomography based detection products used in aviation security. Plaintiffs represent a purported class of all purchasers of InVision securities

between March 15, 2004 and July 30, 2004 (the "Class Period"). Plaintiffs allege that Defendants committed securities fraud in violation of section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 of the Securities and Exchange Commission ("SEC"), and section 20(a) of the Exchange Act. Defendants Magistri and Mulholland (collectively the "Individual Defendants") were employed at InVision during the class period. Defendant Magistri served as the President and Chief Executive Officer of InVision during the class period. Defendant Mulholland served as InVision's Chief Financial Officer during that time

On March 15, 2004, InVision issued a press release announcing that it was being acquired by General Electric Company ("GE") (the "March 15 Announcement"). On July 30, 2004, InVision issued a press release that it had met with the U.S. Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") to discuss possible violations of the Foreign Corrupt Practices Act ("FCPA"). The DOJ and the SEC were investigating several transactions involving InVision employees located abroad, in which employees allegedly made payments to foreign officials in violation of the FCPA.

On December 6, 2004, InVision and GE completed the merger. On that same day, InVision issued a press release announcing that it had entered into settlements with the DOJ and the SEC resolving the FCPA investigation.

### B.    Alleged Misstatements

Plaintiffs cite three statements alleged to have violated the Exchange Act. Plaintiffs allege that the March 15, 2004 Merger Announcement contained false statements. The announcement stated that the "acquisition is subject to normal closing conditions including customary regulatory approval."

On March 15, 2004, the same day that InVision announced its proposed merger with GE, InVision filed its Form 10-K for the fiscal year 2003 (the "2003 10-K"). Included with the 2003 10-K was a certification, pursuant to the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley Certification"), signed by Magistri.

2

According to the Complaint, the certification stated, in relevant part:

> The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures and have...designed such disclosure controls and procedures to ensure that material information...is made known to us by others within those entities,...[and] [e]valuated the effectiveness of the registrant's disclosure controls and procedures. [We] have disclosed...[a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

Complaint, ¶ 26, Quoting the Sarbanes-Oxley certification for the 2003 10-K

Also on March 15, 2004, InVision filed a copy of the merger agreement between InVision and GE (the "Merger Agreement"). According to the Complaint, the Merger Agreement stated, in relevant part:

> The Company and its Subsidiaries are (and since January 1, 2002 have been) in compliance in all material respects with all laws(including common law), statutes, ordinances, codes, rules,regulations, decrees and orders of Governmental Authorities(collectively, "Laws") applicable to the Company or any of its Subsidiaries, any of their properties or other assets or any of their businesses or operations (including those Laws related to Export Control Requirements and improper payments).

Complaint ¶ 28, Quoting the March 15, 2004 Merger Agreement

Plaintiffs also cite other statements in their complaint, including InVision's 10-Q report for the third quarter 2002 (the "Third Quarter 2002 10-Q") filed November 12, 2002, InVision's Form 10-K for the fiscal year 2002 (the "2002 10-K") filed March 27, 2003, and InVision's 10-Q report for the second quarter 2004 (the "Second Quarter 2004 10-Q") filed August 6, 2004. See Complaint ¶ 36, 40,46.[1]

## LEGAL STANDARD

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if a

---

[1] Defendants argue that these statements are not actionable because they were made outside of the Class Period, citing *In re Clearly Canadian Secs. Litig.*, 875 F. Supp. 1410, 1420 (N.D. Cal. 1995). However, Plaintiffs are not asserting securities fraud claims based upon the truth or falsity of these statements. Rather, these statements were submitted in support of the falsity of other statements made within the Class Period. To the extent that these statements are used to demonstrate the truth or falsity of Class Period statements, they are relevant. *See, In re Scholastic Corp. Securities Litigation*, 252 F.3d 63, 72 (2d Cir. 2001) (finding pre-class statements could be relevant in demonstrating the falsity of class period statements.)

3

plaintiff pleads insufficient facts under an adequate theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must take all of the material allegations in the plaintiff's complaint as true, and construe them in the light most favorable to the plaintiff. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

In the context of a motion to dismiss, review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). When matters outside the pleading are presented to and accepted by the court, the motion to dismiss is converted into one for summary judgment. However, matters properly presented to the court, such as those attached to the complaint and incorporated within its allegations, may be considered as part of the motion to dismiss. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Where a plaintiff fails to attach to the complaint documents referred to therein, and upon which the complaint is premised, a defendant may attach to the motion to dismiss such documents in order to show that they do not support the plaintiff's claim. *See Pacific Gateway Exchange*, 169 F. Supp. 2d at 1164; *Branch v. Tunnell*, 14 F.3d 449, 44 (9th Cir. 1994) (overruled on other grounds). Thus, the district court may consider the full texts of documents that the complaint only quotes in part. *See In re Stay Electronics Sec. Lit.*, 89 F.3d 1399, 1405 n.4 (1996), *cert denied*, 520 U.S. 1103 (1997). This rule precludes plaintiffs "from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998).

Rule 8(a) of the Federal Rules of Civil Procedure only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Accordingly, motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6) are typically disfavored; complaints are construed liberally to set forth some basis for relief, as long as they provide basic notice to the defendants of the charges against them. *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 1248, 1257 (N.D. Cal. 2000). In the securities fraud context however, the pleading requirements are more stringent.

4

**1.      Securities Fraud Under § 10(b) of the Exchange Act and SEC Rule 10b-5**

Plaintiffs have alleged securities fraud in violation of section 10(b) and SEC Rule 10b-5. Under section 10(b) it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated under Section 10(b), makes it unlawful for any person to use interstate commerce: (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5. The elements of a Rule 10b-5 violation are: (1) a misrepresentation or omission; (2) of material fact; (3) made with scienter; (4) on which the plaintiff justifiably relied; (5) that proximately caused the alleged loss. *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999).

In order to state a claim under section 10(b), a complaint must overcome several pleading barriers. First, when alleging fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs to state with particularity the circumstances constituting the fraud. To meet the heightened pleading requirements of Rule 9(b), a fraud claim must contain three elements: (1) the time, place, and content of the alleged misrepresentations; and (2) an explanation as to why the statement or omission complained of was false or misleading. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–49 (9th Cir. 1994).

Next, a plaintiff must overcome the heightened pleading requirements of the Private Securities Litigation Reform Act (the "PSLRA"). Congress enacted the PSLRA in 1995 to provide "protections to discourage frivolous [securities] litigation." H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 32 (Nov. 28, 1995). Under the PSLRA, complaints alleging misrepresentations or omissions, must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on

5

information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. §78u-4(b)(1).

Additionally, the PSLRA imposed heightened requirements for pleading scienter. Under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Ninth Circuit, in interpreting the PSLRA, has held that "a private securities plaintiff proceeding under the [PSLRA] must plead, in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics Inc.*, 183 F.3d 970, 974 (9th Cir. 1999). If the complaint does not satisfy the pleading requirements of the PSLRA, upon motion by the defendant, the court must dismiss the complaint. *See* 15 U.S.C. §78u-4(b)(1).

Even if a plaintiff overcomes the falsity and scienter pleading barriers, the PSLRA's Safe Harbor provision provides that a securities fraud claim may not lie with respect to a statement that is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(I). A person may be held liable if the forward-looking statement is made with "actual knowledge . . . that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1)(B); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003); *but see In re Seebeyond Technologies Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1164-65 (C.D. Cal. 2003) (disagreeing with the analysis in *America West* and finding that a defendant is immune from liability if it satisfies either 15 U.S.C. § 78u- 5(c)(1)(A) or (B)).

**ANALYSIS**

**A.    The March 15, 2004 Merger Announcement**

**1. Falsity and Scienter**

In order for a complaint to allege securities fraud, "a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an

6

1  explanation as to why the statement or omission complained of was false or misleading." *In re*
2  *GlenFed Sec. Litig*., 42 F.3d 1541, 1548 (9th Cir. 1994)**.**
3       In the instant case, Plaintiffs have failed to plead specific facts indicating exactly how the
4  March 15 Announcement was false or misleading. Plaintiffs cite the following language:

> We're excited to become part of GE[.]…This transaction will improve market reach of the merged companies and accelerate development of technology and products to protect the public worldwide. I look forward to InVision's scientists working with GE's Global Research Center and GE's CT medical imaging capabilities...The acquisition is subject to normal closing conditions including customary regulatory approval.
>
> March 15 Announcement

     Plaintiff's complaint does not adequately specify what exactly is false or misleading about this statement. Plaintiffs cite paragraphs 58 and 71, contending that these allegations are sufficient to meet this pleading requirement. The Court does not agree. The language cited by Plaintiffs contains broad assertions about Defendants' duty to disclose that are vague in nature. They are not specifically directed to the March 15 Announcement, and they do not explain why that statement in particular was false or misleading. Under the PSLRA, plaintiffs must clearly plead, for each and every statement, why the that statement was false or misleading. *Id*. A plaintiff does not meet this burden by citing general allegations which are not directed to particular statements. *Id.* Here, on the face of the Complaint, it is not possible to discern precisely what is false or misleading about the March 15 Announcement.

     In order to meet the scienter pleading requirement, Plaintiffs must plead facts showing that Defendants knew that each statement was untrue or misleading at the time they were made. *Yourish v. California Amplifier,* 191 F.3d 983, 994 (9th Cir. 1999). This prevents a "fraud by hindsight" situation, in which a statement is made, and later turns out to be false. *In re Copper Mountain Securities Litigation*, 311 F.Supp.2d 857, 866 (N.D.Cal.,2004). Plaintiffs must therefore, plead specific, contemporaneous facts specifying that as of March 15, 2004, the date of the Merger Announcement, Defendants knew that statements made therein were false or misleading. Plaintiffs have failed to do so in the Complaint before the Court.

7

**2.    Safe Harbor**

The PSLRA created a safe-harbor for liability for statements which were forward-looking and accompanied by meaningful warnings of risk. 15 U.S.C. § 78u-5(c).  However, a person may be held liable if the forward-looking statement is made with "actual knowledge . . . that the statement was false or misleading."  15 U.S.C. § 78u-5(c)(1)(B); *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003).

Defendants argue that the March 15 Announcement fits squarely within the safe-harbor provision of the PSLRA. "A forward-looking statement is any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions underlying or related to' any of these issues." *America West,* 320 F.3d. 936.  The Court agrees that the statement is forward-looking for the purposes of the safe-harbor provision.  The March 15 Announcement describes the operational expectations for the upcoming merger and falls within the safe-harbor provision of the PSLRA as it was accompanied by meaningful cautionary language.

Plaintiffs argue that "allegations based upon omissions of existing facts or circumstances do not constitute forward-looking statements protected by the safe harbor..." Opposition 12:7-9.  For this proposition, they cite *America West,* 320 F.3d. at 936-7, and *In re ESS Tech., Inc. Secs. Litig.*, 2005 U.S. Dist. LEXIS 2593 at 15 (N.D. Cal. 2005).  However, the Court has reviewed these cases and has determined that they do not address the issue at hand – whether the safe-harbor provision does or does not cover statements alleged to be misleading due to omissions of existing facts or circumstances.

Although the Court finds that the March 15 Announcement is "forward-looking" for the purposes of the PSLRA, the Court is unable to decide whether the safe-harbor provision protects the statement from liability. This is because, as discussed above, it is not clear from the face of the Complaint exactly what about the March 15 Announcement it is that Plaintiffs allege is false or misleading.  Until that issue is clarified, the Court cannot rule on the issue of safe-harbor immunity.

**B.      The Sarbanes-Oxley Certifications and the Merger Agreement+**

**1. Falsity**

The Sarbanes-Oxley Certifications contain statements to the effect that Defendants: 1) designed and maintained disclosure controls; 2) evaluated the effectiveness of these disclosure controls; 3) disclosed any change in the registrant's internal control over financial reporting; 4) disclosed all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting; 5) disclosed any fraud that involves management or other employees who have a significant role over financial reporting.

It is not clear from the Complaint precisely which of these statements Plaintiffs allege to be false or misleading. Although the Complaint contains general allegations, none of these plead facts clearly contradicting statements actually made within the Sarbanes-Oxley certifications.  For example, Plaintiffs' complaint states that InVision "did not...maintain a system of internal controls adequate to uncover unlawful activities or to insure compliance with...the FCPA." Complaint, ¶ 52. It is not obvious to which of the above statements this allegation is directed. Nowhere in the Sarbanes-Oxley Certifications do Defendants make any statements regarding the adequacy of systems designed to insure compliance with the FCPA.  The Certifications do assert that Defendants have disclosed all material weaknesses related to *financial reporting controls* known by Defendants at the time the statement was made.  However, Plaintiffs' allegations do not in any way contract this point.

In order for the Court to construe the allegations, as plead, as actually alleging the falsity of Defendants' Certification statements, the Court would have to interpret Defendants' statements well beyond their plain meaning.[2]  The Court declines to do so.  For each statement identified, Plaintiffs are required by the PSLRA to plead facts indicating why that statement is false or misleading. *GlenFed*, 42 F.3d at 1548. Obviously, Plaintiffs' factual allegations must be based upon what Defendants *actually* said, not upon Plaintiffs' desired interpretation of what Defendants said.  Here Plaintiffs' factual allegations, even viewed in the light most favorable to Plaintiffs, do not in any way illuminate the truth or falsity of Defendants' actual Certification statements.  Therefore, Plaintiffs

---

[2] Under Plaintiffs' apparent reading, the Court would have to read Defendants' statement to say that Defendants warranted the presence of systems which were adequate to uncover any and all improper conduct, even conduct outside the realm of financial reporting.  Defendants said no such thing.

9

have failed to meet their PLSRA burden in this respect.

**2. Scienter**

Under the PSLRA, plaintiffs must plead, in detail, specific facts that give rise to a strong inference that defendants acted with scienter. *Ronconi v. Larkin,* 253 F.3d 423, 429 (9th Cir. 2001). Plaintiffs allege the following in support of an inference of scienter: 1) that the DOJ FCPA settlement agreement between InVision and the DOJ contained language to the effect that InVision was aware of a high probability that potential FCPA violations were occurring; 2) InVision lacked certain internal control mechanisms; 3) the alleged FCPA violations followed similar patterns, thereby allegedly necessitating the approval of management; 4) the alleged FCPA violations were improperly recorded in InVision's financial statements; 5) the Individual Defendants had motive to withhold information about the alleged FCPA violations. (Complaint, ¶ 67-71; 77-78).

Defendants argue that Plaintiffs fail to plead any substantial facts with respect to the Individual Defendants and the requisite state of mind. Other than general assertions about the Individual Defendants' roles and responsibilities and motivations, Plaintiffs do not plead specific facts to support the allegation that Magistri or Mulholland actually knew about the FCPA violations between March and July 2004.[3] Defendants contend that it is improper to infer that defendants Magistri or Mulholland had knowledge of certain information merely by virtue of their position within the company, citing *In re Syncor Int'l Corp. Secs. Litig.,* 327 F. Supp. 2d 1149, 1160 (D. Cal. 2004) for support. The Court agrees. There are insufficient facts alleged to infer that Magistri or Mulholland had any knowledge of the alleged FCPA violations in light of the PLSRA's heightened

---

[3] Plaintiffs cite *In re Lattice Semiconductor Corp. Secs. Litig*, 2006 U.S. Dist. LEXIS 262 (D. Or. 2006) for the proposition that the Court should impute scienter as to Magistri and Mulholland based upon their Sarbanes Oxley certifications. Plaintiffs' reliance on *Lattice* is misplaced as that case presented a significantly greater number of facts concerning the inference on scienter than exists in the instant case. In *Lattice,* the plaintiffs' allegations demonstrated that the company's former controller "made improper journal entries with the knowledge of at least some of the individual defendants." *Id.* at 32. Moreover, the *Lattice* plaintiffs provided evidence of specific internal reports, databases and meetings, the purpose of which was to keep the individual defendants informed of the company's financial situation during the relevant time period. Additionally, the *Lattice* defendants allegedly admitted that the improper accounting entries which formed the basis of the plaintiff's claim were the result of deficiencies in the company's internal disclosure controls. In contrast, in the instant case, Plaintiffs have not alleged any such similar facts concerning actual knowledge on the part of the Individual Defendants, nor have they alleged facts linking the Sarbanes Oxley certifications to later admissions of improper financial disclosure controls. Accordingly, *Lattice* is inapposite.

10

scienter requirements.

Similarly, the Court rejects Plaintiffs' contention that scienter should be imputed to Invision based upon the scienter allegations concerning Magistri and Mulholland. Plaintiffs' allegations are inadequate to create an inference of corporate scienter on the part of InVision. *In re Apple Computer, Inc.,* 243 F. Supp. 2d 1012, 1023 (ND. Cal. 2002) ("A defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter, i.e., knows that the statement is false, or is at least deliberately reckless as to its falsity, at the time that he or she makes the statement...the Ninth Circuit has rejected the concept of "collective scienter" in attributing scienter to a corporation."); *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435-6 (9th Cir. 1995).

## C.     **Dismissal Without Prejudice**

Leave to amend under Federal Rule of Civil Procedure 15 should be liberally granted. "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital v. Aspeon Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003) (error to refuse leave to amend in a securities fraud case to allow plaintiff to plead scienter). Here, it is possible that Plaintiffs could remedy their significant pleading defects in an amended complaint by adding detailed factual support for their allegations of false or misleading statements, and demonstrating that Defendants had the requisite scienter at the time the statements were made. The Court thereby **GRANTS** the motion to dismiss the Amended Complaint without prejudice.

## CONCLUSION

After consideration of the Amended Complaint in light of the heightened pleading standards of the PSLRA and the requirements of Federal Rule of Civil Procedure 12(b)(6), the Court **GRANTS** Defendants' Motion to Dismiss the Amended Complaint with leave to amend.[4] Plaintiffs must file any amended complaint within 30 days of the filing of this order. Should Plaintiffs choose to amend

---

[4] Granting Docket No. 51, Motion to Dismiss.

11

their complaint, Plaintiffs must: 1) Clearly identify the precise portions of each statement that is alleged to be false; 2) Immediately thereafter, plead specific facts clearly indicating that the statement was false, and facts clearly indicating that Plaintiffs acted with the requisite state of mind; 3) and plead any other facts required by the PLSRA with the requisite particularity.  Vague assertions and allegations, scattered throughout Plaintiffs' Complaint will not serve to meet their PLSRA burden.

**IT IS SO ORDERED.**

Dated: January 21, 2006

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE